**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANNE POWELL,**

        **Plaintiff,**               **Case No.:**

**v.**

**MEDSTAR LABORATORY OF**
**FLORIDA, INC., and**
**UNITED CLINICAL LABORATORY,**
**LLC,**

        **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ANNE POWELL, by and through her undersigned

counsel and sues the Defendants, MEDSTAR LABORATORY OF FLORIDA, INC.

("MEDSTAR") and UNITED CLINICAL LABORATORY, LLC. ("UCL") and states

as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,

1367.

2.      Venue lies within the United States District Court for the Middle

District of Florida, Tampa Division because a substantial part of the events giving

rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## **PARTIES**

3.     Plaintiff, ANNE POWELL, is an adult resident of Hillsborough County, Florida.  At all times material, Plaintiff was an employee of Defendants within the meaning of the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

4.     Defendant, MEDSTAR LABORATORY OF FLORIDA, INC., is a Florida Profit Corporation authorized and doing business in this Judicial District. At all times material, MEDSTAR, employed Plaintiff.  At all times material, MEDSTAR employed the requisite number of employees and, therefore, is an employer as defined by the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

5.     Defendant, UNITED CLINICAL LABORATORY, LLC, is a Florida Limited Liability Company authorized and doing business in this Judicial District. At all times material, UCL employed Plaintiff.  At all times material, UCL employed the requisite number of employees and, therefore, is an employer as defined by the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

6.     Defendants were/are an integrated enterprise/single employer or joint employers of Plaintiff.

## GENERAL ALLEGATIONS

7.     At all times material, Defendants acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

8.     At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer(s).

9.     Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

10.     Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

11.     On February 12, 2021, Plaintiff timely filed Charges of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

12.     On November 5, 2021, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charges of Discrimination.  This Complaint is filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

13.     Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because

more than one-hundred and eighty (180) days have passed since the filing of the Charge.

## FACTUAL ALLEGATIONS

14.   On approximately September 26, 2019, Plaintiff began her employment with Defendants as a Senior Toxicologist.

15.   During Plaintiff's employment, she was regularly praised for her work and was not disciplined or criticized for her job performance or behavior.

16.   Starting in or around October 2019, Plaintiff's co-worker, Nadesh Ramroop (Medical Technologist) began making discriminatory sex-based comments about Plaintiff and other female employees of Defendants.   These comments include, but are not limited to:

   (a)   In reference to his former female supervisor, Ramroop regularly commented that she had a husband and Ramroop could not understand why she would want to work.

   (b)   Ramroop told Plaintiff that she should quit her job, stay home, and take care of her children and their schooling due to the pandemic.

   (c)   Ramroop asked why Plaintiff worked because Plaintiff had a husband that worked, and she should stay home with her children.

   (d)   Ramroop asked why Plaintiff was working if Plaintiff had children at home.

   (e)   Ramroop asked about Plaintiff's children and what they did when Plaintiff was not there to care for them.

(f)     When Ramroop learned that Plaintiff hired a nanny, he stated that it was "good" because "A woman should be home taking care of children."

(g)     If the laboratory needed cleaning, Ramroop commented that Plaintiff should clean it up because it was her "responsibility."

(h)     Nearly every Thursday when the male cleaner came to clean the lab, Ramroop stated that he did not like that a male cleaned the lab and requested that Plaintiff contact the cleaning company and request that a female clean the lab.

(i)     Ramroop regularly referred to Luisa Bonilla (General Supervisor) as a "bitch," "rude," and "bossy."

17.     Over time, Ramroop began exhibiting more controlling behavior toward Plaintiff.  For example, Ramroop told Plaintiff to copy him on every work email that she sent.

18.     In May 2020, when Kat Brown (Technical Supervisor) became Plaintiff's direct supervisor, Ramroop told Plaintiff to copy him on every email that Plaintiff sent to Brown and claimed that he had a "right" to know what was in Plaintiff's emails to Brown.

19.     On or about July 21, 2020, Luisa Bonilla was promoted to General Supervisor.  Ramroop was unhappy about her promotion and again referred to her as a "bitch."

20.     Beginning in August 2020, Plaintiff started having conversations with Kat Brown regarding Ramroop's behavior and the difficulties that Plaintiff was having with him. Specifically, Plaintiff told Brown that Ramroop was controlling

and derogatory towards women. Brown stated that she would discuss the issues with Bonilla.

21.     On or about August 27, 2020, Plaintiff spoke with Brown regarding illegal behavior that Ramroop was engaged and reiterated his negative comments.

22.     From late August 2020 to early September 2020, Brown told Plaintiff that Defendants were going to terminate Ramroop's employment.   Plaintiff reiterated the difficulties that she was having with Ramroop, particularly his derogatory and controlling behavior towards women.

23.     On or about September 5, 2020, Brown informed Plaintiff that "upper management" decided that Ramroop would not be terminated from his job. Additionally, Brown told Plaintiff that "upper management" was really happy with the performance of the lab.  Brown told Plaintiff that she and Bonilla were frustrated with Ramroop but Kirill Vesselov (Owner/CEO) did not care what Ramroop did or said.   Brown further told Plaintiff that there was a "dick measuring contest" at UCL and she was hoping for changes.  After Brown left that day, Ramroop stated: "So nice to come to work today and get yelled at by a woman!"

24.     That same day (September 5, 2020), Plaintiff's co-worker, Chris Midkiff (Accessioner/Laboratory Technician) was upset with Ramroop's work contributions.   Plaintiff called Kat Brown and explained what happened after

Brown left the lab and reiterated the problems with Ramroop, including his controlling and derogatory behavior toward women.   To that end, Plaintiff informed Brown of Ramroop's comment about being yelled at by a woman after Brown left earlier in the day. Brown told Plaintiff that there were "cultural differences" with Ramroop and he was permitted to say what he wanted about women "even if we don't agree with it."  Plaintiff told Brown that Ramroop should not be permitted to create a hostile work environment and Brown told Plaintiff that she would talk with Luisa Bonilla again about his behavior.

25.   On or about September 24, 2020, Plaintiff said "good morning" to Ramroop and he scowled at Plaintiff and walked away.  Plaintiff then noticed that Ramroop sent her a cryptic text message, so Plaintiff asked Ramroop what it meant.  Ramroop raised his voice, walked up to Plaintiff, and yelled in her face. Ramroop told Plaintiff that she was supposed to listen to him.  To deescalate, Plaintiff put her hand up, told him to stop, stepped back and walked out of the lab.  His behavior left Plaintiff feeling unsafe and physically threatened, which lead Plaintiff to call her husband.  Then, Plaintiff sent Kat Brown a text message and informed her that there was another incident with Ramroop.  Brown did not contact Plaintiff until approximately seven (7) hours later.  When she did, Plaintiff explained what happened and reiterated Ramroop's discriminatory treatment toward women.  Brown told Plaintiff that she needed to get along with Ramroop.

Plaintiff explained that she felt physically threatened by Ramroop and had a right to feel safe at work.  Brown seemed irritated by the situation and was not supportive.

26.     Brown told Plaintiff to write down all of the issues with Ramroop and that she was going to have a meeting with Plaintiff, Ramroop, Bonilla, and Chris Midkiff so they could "air our grievances" and move forward.

27.     On September 25, 2020, Plaintiff spoke with Kat Brown and told her that she did not feel safe around Ramroop.  Plaintiff was having a panic attack and was worried about her safety.  Brown told Plaintiff to take the day off and the next day if needed.  Later that day, Plaintiff sent a text message to Brown and informed Brown that she would return to work the next day.  Brown told Plaintiff that she contacted Human Resources regarding Plaintiff's situation.  Plaintiff was surprised because it was the first time that Plaintiff learned that Defendants had a Human Resources representative.

28.     Thereafter, Jennifer Wilhelm (Human Resources) called and told Plaintiff that she spoke with Brown regarding Ramroop's behavior.  Wilhelm told Plaintiff that Ramroop's behavior was against company policy, and she was sorry that Plaintiff was placed in that situation.  Wilhelm reiterated that Plaintiff's safety was paramount and informed Plaintiff that there would be a Human Resources investigation initiated.  Plaintiff never heard from Wilhelm again.

29.     On October 1, 2020, Brown, Bonilla, and Jeff (last name unknown) arrived at the lab.  Plaintiff was never given Jeff's name and had never met him before.  Bonilla took Ramroop into an office and met with him.  Thereafter, Jeff escorted Ramroop out of the building.  Bonilla then approached Plaintiff, stated that she terminated Ramroop and that the company was going to lay off both Plaintiff and Chris Midkiff.  Bonilla claimed that they were closing the lab and that the "big boss" (Plaintiff understood "big boss" to refer to Vesselov) said to take care of Plaintiff and Midkiff and offer two weeks' severance.  Plaintiff was shocked because Kat Brown recently told Plaintiff that "upper management" was very happy with the lab's performance.   Bonilla stated that it was a "business decision" because the sample volume had gone down and there were "problems" with the lab.  Specifically, Bonilla stated: "The issues with Nadesh [Ramroop] and you make it necessary for us to close this laboratory faster than we expected."

30.     At this point, Plaintiff knew that she was terminated because of her repeated complaints about Ramroop because the sample volume remained steady from January 2020 to Plaintiff's termination. Additionally, a new lab was recently opened in or around Jacksonville Beach, Florida, which was confusing if there was low sample volume.

31.     Thereafter, Kat Brown returned from the restroom and stood next to Bonilla, looking upset.  Brown stated to Plaintiff: "I am so sorry.  It makes me feel

like shit that we have to fire you because of Nadesh and the problems at Medstar. I was going to call you when I found out what they were going to do to you, but I was told I wasn't allowed to."  Plaintiff asked Brown if she should prepare certain instruments to be shut down and taken offline, but Brown told Plaintiff not to because she was going to still make monthly visits to the lab.  Plaintiff also asked if she should dispose of certain reagents that would expire but was told not to.  It was unusual to Plaintiff that everything was kept in working order if the lab was truly being shut down.

32.    Bonilla, Brown, and Plaintiff spoke about Plaintiff's complaints regarding Ramroop and their experiences with him and how he treated women. Bonilla told Plaintiff that Ramroop should have been fired and the company should have hired a new Medical Technologist but she was not the "big boss" and this was the "big boss'" decision (again, Plaintiff understood "big boss" to refer to Vesselov).  Finally, Bonilla asked Plaintiff to send an email to her, Brown and Dr. William DePond (Lab Director) with Plaintiff's complaints about Ramroop so she could include it in his personnel file.  Plaintiff complied with the request.

33.    On October 2, 2020, Plaintiff asked Luisa Bonilla about the severance package.  Plaintiff showed Bonilla her offer letter that stated Plaintiff was entitled to three (3) weeks of PTO once Plaintiff reached one year of employment. Additionally, the employee handbook stated that employees who are separated

through no fault of their own would receive the unused PTO with their final paycheck. In addition to the PTO, Plaintiff was still owed pay for her last week of work. For clarification, Plaintiff asked Bonilla if she was going to receive her last week's pay, the PTO, and two (2) weeks' severance. Bonilla told Plaintiff that she would "only get two weeks." Plaintiff provided Bonilla with her offer letter and employee handbook. In response, Bonilla called Jennifer Wilhelm and explained the situation. During their conversation, Plaintiff heard Wilhelm laugh and say in a mocking manner: "She is not entitled to anything. This is Florida." Bonilla told Plaintiff that she would talk to Vesselov the "big boss." Later that day, Bonilla called and informed Plaintiff that she would receive her last week of pay and her unused PTO. Bonilla was silent as to the severance and Plaintiff never received a severance. By comparison, Midkiff was paid one-week of severance.

34.     On November 2, 2020, Plaintiff received a text message from Kat Brown regarding a personal item that Plaintiff left at the lab. Brown informed Plaintiff that she would be there that day running proficiency testing, which is not consistent with a lab that was closing.

## COUNT I
## TITLE VII—SEX HARASSMENT

35.     Plaintiff, ANNE POWELL, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

36.     Plaintiff, a female, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").

37.     The aforementioned actions by Nadesh Ramroop constitute unwelcome sex-based harassment.

38.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

39.     Defendants knew or should have known of the harassment of Plaintiff.

40.     The aforementioned actions created a hostile environment and constitute discrimination on the basis of gender/sex, in violation of Title VII.

41.     The sex-based harassment and conduct of Nadesh Ramroop created a hostile work environment which interfered with Plaintiff's ability to perform her job.

42.     Defendants' actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

43.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

44.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

      a.      Back pay and benefits;

      b.      Prejudgment interest on back pay and benefits;

      c.      Front pay and benefits;

      d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.      Punitive damages;

      f.      Attorneys' fees and costs;

      g.      Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT—SEX HARASSMENT

45.     Plaintiff, ANNE POWELL, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

46.     Plaintiff, a female, is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

47.     The aforementioned actions by Nadesh Ramroop constitute unwelcome sex-based harassment.

48.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

49.     Defendants knew or should have known of the harassment of Plaintiff.

50.     The aforementioned actions created a hostile environment and constitute discrimination on the basis of gender/sex, in violation of the Florida Civil Rights Act.

51.     The sex-based harassment and conduct of Nadesh Ramroop created a hostile work environment which interfered with Plaintiff's ability to perform her job.

52.     Defendants' actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

53.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

54.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

        a.     Back pay and benefits;

        b.     Prejudgment interest on back pay and benefits;

        c.     Front pay and benefits;

d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e. Punitive damages;

f. Attorneys' fees and costs;

g. Injunctive relief; and

h. For any other relief this Court deems just and equitable.

## COUNT III
## <u>TITLE VII - SEX DISCRIMINATION</u>

55. Plaintiff, ANNE POWELL, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

56. Plaintiff, a female, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").

57. By the conduct described above, Defendants engaged in unlawful employment practices and discriminated against Plaintiff on account of her sex by terminating Plaintiff's employment and failing to pay Plaintiff the promised severance (compared to her male counterpart).

58. Defendants' adverse employment actions toward Plaintiff were motivated by sex-based considerations.

59. Defendants' unlawful and discriminatory employment practices toward Plaintiff were intentional.

60.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

61.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

    a.     Back pay and benefits;

    b.     Prejudgment interest on back pay and benefits;

    c.     Front pay and benefits;

    d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.     Punitive damages;

    f.     Attorneys' fees and costs;

    g.     Injunctive relief; and

    h.     For any other relief this Court deems just and equitable.

## COUNT IV
## <u>FLORIDA CIVIL RIGHTS ACT - SEX DISCRIMINATION</u>

62.     Plaintiff, ANNE POWELL, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

63.     Plaintiff, a female, is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

64.     By the conduct described above, Defendants engaged in unlawful employment practices and discriminated against Plaintiff on account of her sex by terminating Plaintiff's employment and failing to pay Plaintiff the promised severance (compared to her male counterpart).

65.     Defendants' adverse employment action toward Plaintiff was motivated by sex-based considerations.

66.     Defendants' unlawful and discriminatory employment practices toward Plaintiff were intentional.

67.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

68.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

        a.     Back pay and benefits;

        b.     Prejudgment interest on back pay and benefits;

        c.     Front pay and benefits;

     d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

     e.     Punitive damages;

     f.     Attorneys' fees and costs;

     g.     Injunctive relief; and

     h.     For any other relief this Court deems just and equitable.

## COUNT V
## TITLE VII – RETALIATION

69.    Plaintiff, ANNE POWELL, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

70.    Plaintiff engaged in protected activity by opposing an employment practice made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").  Specifically, Plaintiff opposed sex-based harassment and discrimination by making reasonable, good-faith complaints regarding Nadesh Ramroop's harassing and discriminatory behavior.

71.    In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions when Plaintiff's employment was terminated and Defendants failed to pay Plaintiff the promised severance (compared to her male counterpart).

72.     Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendants are causally connected to her opposition and resistance of sex-based harassment and discrimination.

73.     The aforementioned actions by Defendants constitute retaliation by Defendants in violation of Title VII of the Civil Rights Act of 1964.

74.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

75.     As a result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

       a.     Back pay and benefits;

       b.     Prejudgment interest on back pay and benefits;

       c.     Front pay and benefits;

       d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

       e.     Punitive damages;

       f.     Attorneys' fees and costs;

       g.     Injunctive relief; and

h.    For any other relief this Court deems just and equitable.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT—RETALIATION

76.    Plaintiff, ANNE POWELL, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

77.    Plaintiff engaged in protected activity by opposing an employment practice made unlawful by the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA").  Specifically, Plaintiff opposed sex-based harassment and discrimination by making reasonable, good-faith complaints regarding Nadesh Ramroop's harassing and discriminatory behavior.

78.    In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions when Plaintiff's employment was terminated and Defendants failed to pay Plaintiff the promised severance (compared to her male counterpart).

79.    Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendants are causally connected to her opposition and resistance of sex-based harassment and discrimination.

80.    The aforementioned actions by Defendants constitute retaliation by Defendants in violation of the Florida Civil Rights Act.

81.    Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

82.    As a result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

     a.    Back pay and benefits;

     b.    Prejudgment interest on back pay and benefits;

     c.    Front pay and benefits;

     d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

     e.    Punitive damages;

     f.    Attorneys' fees and costs;

     g.    Injunctive relief; and

     h.    For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

83.    Plaintiff, ANNE POWELL, demands a trial by jury on all issues so triable.

**DATED** this 2nd day of February 2022.

FLORIN GRAY BOUZAS OWENS, LLC

*Gregory A. Owens*

**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**MIGUEL BOUZAS, ESQUIRE**
Florida Bar No.: 48943
miguel@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*